UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIRON WASHINGTON, JR.,

                Plaintiff,

v.                                       Case No. 24-cv-1426-bhl

LT. JTS #1517 et al.,

                Defendants.

## DECISION AND ORDER

Plaintiff Tiron Washington, Jr., who is incarcerated at the Kenosha County Jail, is representing himself in this 42 U.S.C. §1983 case. Washington is proceeding on a Fourteenth Amendment claim based on allegations that Defendants refused to provide him with medicated eye drops that he said had been prescribed by an eye doctor. Dkt. No. 7. On July 8, 2025, Defendants filed a motion for summary judgment on the ground that Washington failed to exhaust the available administrative remedies before he filed this lawsuit as well as on the merits. Dkt. No. 47. For the reasons explained below, the Court will grant Defendants' motion and dismiss this case.

## BACKGROUND

At the relevant time, Washington was an inmate at the Kenosha County Pre-Trial Detention Center. On September 3, 2024, he had an offsite appointment at MyEyeDr with Dr. Donna Burnello-Beard and Dr. Jennifer Pileski-Perona (who are not Defendants). According to Washington, at the appointment, he was told that he was at a high risk of glaucoma and needed medicated eye drops to reduce or prevent the onset of symptoms. On October 7, 2024, more than a month after his appointment, Washington submitted a health services request in which he primarily complained about an unrelated issue; however, at the end of the request he stated, "Also

the eye doctor spoke to me about eyedrops for glaucoma before my eyes get worse that you guys could prescribe me, I'm waiting on your feedback from that also!" A nurse responded the next day and informed him that "[t]he prescription from the eye doctor does not have anything about eye drops on it." Dkt. No. 49[1] at ¶¶1-5; Dkt. No. 57-1 at 1-2.

On October 23, 2024, Washington filed a grievance in which he stated that he told medical staff that the eye doctor diagnosed him with glaucoma and told him that the ocular pressure in his eyes is rising and that he should be prescribed eye drops to lower the pressure. Washington further explained that staff informed him that the doctor's prescription did not include anything about eyedrops. Washington also stated that his eyes are hurting, they jump, and he can feel pain and pressure in the back of his eyes, which causes them to get blurry even when he has glasses on. He asked staff to look into the issue and help him as he has been having headaches ever since he was diagnosed with glaucoma. Washington offers no evidence suggesting that he submitted a health services request complaining about the worsening condition of his eyes prior to raising his concerns in his October 23, 2024 grievance. Dkt. No. 57-1 at 3; Dkt. No. 65 at ¶15.

On October 29, 2024, Defendant Nurse Jessica Frater denied Washington's grievance after reviewing the medical records, which confirmed that Washington had *not* been diagnosed with glaucoma and that no eye drops had been prescribed. The record states, "Glaucoma Suspect OU, open angle with borderline findings, low risk." The record also said "Plan: Referral" with no further description or explanation, followed by "Plan: Counseling – Glaucoma suspect." The record explained that the provider had counseled Washington, in part, that "Glaucoma suspects do not usually need to be treated but do need close monitoring for early signs of glaucoma damage. Some glaucoma suspects require treatment, and the same medical options of glaucoma eye drops

---

[1] Defendants inadvertently filed a draft version of their amended proposed findings of fact that contained tracked changes and comment bubbles. *See* Dkt. No. 49. The Court cautions counsel to closely review documents before they are filed.

and pills are utilized." Finally, the record instructed that the office be contacted if there was "[a]ny loss of vision, eye pain, cloudy vision, photophobia, or dark spots or clouds blocking portions of [Washington's] vision." Nowhere does the record recommend that Washington be provided with medicated eyedrops; it highlights only that some glaucoma suspects who receive treatment use the same eyedrops and pills used by those who are diagnosed with glaucoma. Dkt. No. 50-4 at 2-3; Dkt. No. 49 at ¶18; Dkt. No. 65 at 16.

On October 29, 2024, Washington appealed the denial of his grievance, and on October 31, 2024, Nurse Ingram, Lt. JTS #1517, Sgt. JM #1201, and Sgt. BB #1244 denied the appeal, explaining to Washington that he had been informed he needed glasses to treat myopia and that as a glaucoma suspect he may develop glaucoma but did not require treatment at that time. They further advised Washington that there was no current recommendation for medication. Dkt. No. 49 at ¶20; Dkt. No. 65 at ¶17.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence

3

of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

The Prison Litigation Reform Act, which applies to this case because Washington was an incarcerated pretrial detainee when he filed his complaint, provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The parties agree that, consistent with the grievance policy, Washington filed a grievance on October 23, 2024, complaining that a nurse had denied his request for medicated eye drops, which he asserted had been recommended by an offsite eye doctor. They further agree that, after reviewing Washington's medical records from the eye doctor and confirming that there had been no recommendation for medicated eye drops, Nurse Frater denied the grievance. Finally, the parties agree that Washington submitted an appeal of the denial, which was also denied.

Despite Washington completing each step of the grievance process, development of the records reveals that, for the following reasons, Defendants' motion for summary judgment must be granted. First, Washington did not sue the correct Defendants. Rather than sue the nurse who denied his request for medicated eye drops, he opted to sue the jail officials who denied his grievance and appeal about the nurse's denial. But the Seventh Circuit long ago explained that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation," and "[o]nly persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Accordingly, no jury could reasonably conclude that Defendants caused or contributed to the alleged underlying violation (i.e., the denial of medicated eyedrops) simply because they investigated and ruled on Washington's grievance.

Next, to the extent either of the nurses involved in the review of Washington's grievance and appeal had the authority to provide Washington with medicated eyedrops, the evidence demonstrates that they acted reasonably when the denied Washington's demand. Contrary to Washington's characterization, the eye doctor's recommendation does *not* indicate that jail medical staff should provide Washington with medicated eye drops. Instead, the record merely summarizes the eye doctor's counsel to Washington that, in the event the condition of his eye should worsen, treatment *may* include eyedrops or pills. The record specifically clarifies that: [g]laucoma suspects do not usually need to be treated." Dkt. No. 50-4 at 2. Accordingly, no jury could reasonably conclude that the non-Defendant nurse, Nurse Frater, or Nurse Ingram acted unreasonably when they carefully complied with the eye doctor's recommendation and denied Washington's demand for eyedrops. *See Pittman v. Madison Cnty.*, 108 F.4th 561, 566, 570-72 (7th Cir. 2024) (holding that to prevail on a Fourteenth Amendment medical care claim, a plaintiff must show that: (1) the defendant acted purposefully, knowingly or perhaps recklessly, without regard to her subjective awareness of the risk of inaction, and (2) the defendant's response to the medical condition was objectively unreasonable.).

Washington makes much of the fact that he informed Nurse Frater that the eye doctor had given him guidance that contradicted her written recommendation, but no jury could reasonably conclude that Nurse Frater acted unreasonably when she relied on the eye doctor's written recommendation without contacting her to confirm its accuracy. Jail operations would come to a standstill if staff was required to confirm every written order simply because an inmate, who is not a medical expert, remembered his month-old conversation differently from the written record. *See Riccardo v. Rauch*, 375 F.3d 521 (7th Cir. 2004) ("The Constitution does not oblige guards to believe whatever inmates say.").

Finally, Washington highlights that the eye doctor's recommendation states that the office should be contacted if he experiences any loss of vision, eye pain, cloudy vision, photophobia, or dark spots, but he ignores that he did not mention experiencing any symptoms when he submitted his health services request. Washington first complained that his eyes hurt and jump and that he felt pressure in the back of his eyes in his October 23, 2024 grievance. He made no mention of these or any other symptoms in his health services request in which he demanded medicated eyedrops. Washington seems to argue that, based on the complaints in his grievance, Nurse Frater should have at least referred him back to the eye doctor. But Nurse Frater was not acting as a medical provider when she reviewed his grievance. If Washington wanted to be seen by the eye doctor because of new symptoms, then he should have submitted a health services request for a provider's review. The Constitution does not require that every public employee who knows about a danger act to avert it. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (holding that "no prisoner is entitled to insist that one employee do another's job" because "people who stay within their roles can get more work done, more effectively"). In any event, even if Nurse Frater should have responded to Washington's complaints, she would be entitled to summary judgment because Washington did not file a grievance about her failure to refer him to the eye doctor, so he failed to exhaust the administrative remedies on that claim. Dkt. No. 49 at ¶21.

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Dkt. No. 47) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 26, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.